UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **Jim W. Lee,** | Case No.: |
| Plaintiff, | **CIVIL ACTION** |
| v. | COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 |
| **MAUIIJACKSON SOLUTIONS, LLC.,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

INTRODUCTION

1. Plaintiff Jim W. Lee ("Plaintiff"), brings this action against Defendant MauiiJackson Solutions, LLC, ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Defendant is a land acquisition company operating in St. Petersburg, Florida. To promote its services, Defendant engages in unsolicited marketing, harming consumers, like Plaintiff, in the process.

1

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of his daily life. Plaintiff also seeks statutory damages on behalf of himself, and any other available legal or equitable remedies.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Middle District of Florida.

7. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

**JURISDICTION AND VENUE**

9. Venue is proper in the District Court for the Middle District, in and for Lee County, Florida, because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provide and market its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida, subjecting Defendant to jurisdiction in the State of Florida.

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

**PARTIES**

11. Plaintiff is a natural person residing in the City of Punta Gorda, State of Florida.

12. Defendant is a company based in St. Petersburg, Florida, conducting business in land acquisition.

**THE TCPA**

13. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential

subscribers" who register their phone numbers on the National Do Not Call Registry.

14. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

15. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

16. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts

top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

17. In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

18. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

19. In 2012, the FCC issued an order tightening the restrictions for

automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (*emphasis supplied*).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See*

6

*Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

24. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

25. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See* In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

26. As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (*emphasis in original*)).

27. In a recent decision en banc by the Eleventh Circuit, the Court found that plaintiffs have a concrete injury under Article III with as little as one call or text from a defendant. *Drazen v Godaddy.com, LLC*, USCA11, Case No. 21-10199 (11th Cir. en banc July 24, 2023). The Eleventh Circuit specifically found:

> In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." Id. at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury. While an unwanted text message is insufficiently offensive to satisfy the common law's elements, Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA. As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent." Hunstein, 48 F.4th at 1249.

### GENERAL ALLEGATIONS

28. At all times relevant, Plaintiff was an individual residing within the State of Florida.

29. At all times relevant, Defendant conducted business in the State of Florida.

30. Plaintiff has been on the National Do Not Call Registry since September 28, 2007.

31. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

32. Defendant initiated a series of telephone solicitation calls and text messages in or around 2021, and continued for two years until June 2,

9

2023.

33. The initial phone calls were received on or around April 8, 2021, and the caller ID identified the caller as Mauricio Sosadias, the Managing Director of Defendant.[1] These calls appeared to be generated by an auto dialer, as four calls were made on the same day, each less than an hour apart from the others. Plaintiff rejected all four calls.

34. Merely a few days after these initial missed phone calls, Plaintiff was once again contacted around April 18, 2021, this time through a text message, from the same phone number that had previously called on or around April 8, 2021.

35. In a text message sent to Plaintiff, Mauricio Sosadias identified himself as the texter and conveyed an offer for the Plaintiff's property located on Chinquapin Dr. The exchange consisted of a series of four messages. Plaintiff promptly replied, expressing disinterest in the offer and stated, "No more texts or calls, please." Plaintiff also requested Mauricio to send his information over email.

36. Following the conversation, Mauricio emailed the Plaintiff inquiring about selling Plaintiff's property. Plaintiff asked for the

---

[1] https://mauiijacksonsolutions.com

company name to verify its legitimacy and reiterated the request to cease calls and texts. Mauricio seemingly agreed to stop contacting stating, "Sure thing," and also identified the company as Defendant, MauiiJackson Solutions LLC, based in South Florida.

37. Plaintiff never provided prior express consent for Defendant to call or text him.

38. The calls stopped for about a year, and commenced again on or around January 8, 2022, without Plaintiff's prior express consent.

39. Over the next few months, the calls continued, and the incoming telephone calls originated from a number with a 239 area code, indicating they were coming from Fort Myers, Florida. Upon information and belief Plaintiff believes these calls were from Defendant due to the area code being the same.

40. In total, there were 28 calls spread over the following dates:

- January 8, 2022 (one call)
- January 13, 2022 (two calls)
- January 26, 2022 (two calls)
- January 27, 2022 (two calls)

- January 31, 2022 (three calls)
- February 2, 2022 (three calls)
- February 5, 2022 (two calls)
- February 10, 2022 (two calls)
- February 14, 2022 (one call)
- February 15, 2022 (one call)
- February 18, 2022 (one call)
- February 21, 2022 (one call)
- February 25, 2022 (one call)
- March 2, 2022 (one call)
- March 3, 2022 (one call)
- March 5, 2022 (one call)
- March 9, 2022 (one call)

41. Around a year later, in May 2023, Plaintiff began receiving more calls from the 239 area code belonging to Defendant.

42. On or around May 23, 2023, a phone number belonging to Defendant attempted calling Plaintiff five times in one day. When the calls were received, they appeared as missed calls right away likely

because they were identified as SPAM by Plaintiff's cellular telephone.

43. Similar calls persisted for the rest of the month on the following dates:

- May 24, 2023 (one call)
- May 25, 2023 (three calls)
- May 26, 2023 (three calls)
- May 30, 2023 (one call)

44. On or around June 2, 2023, the Plaintiff answered one last call from the 239 number, belonging to Defendant. During this call, the Plaintiff requested the caller to send an email to verify the caller's identity.

45. Subsequently, on June 7, 2023, the caller on the June 2, 2023 call sent Plaintiff and email and identified themselves as Rhonda Abe working for Defendant, MauiiJackson Solutions. Once again, Defendant stated that it was interested in purchasing Plaintiff's lot of land in Florida.

46. Therefore, over the course of two years, the Plaintiff encountered approximately 75 solicitation telephone calls from the Defendant.

47. Defendant's phone calls constitute telephone solicitation because it encouraged the future purchase or investment in property, goods, or

services under 47 U.S.C. § 227(a)(4), i.e., attempting to promote Defendant's land acquisition company.

48. Plaintiff received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

49. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted. This is in violation of 47 U.S.C. § 227(a)(5).

50. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

51. Defendant's phone calls also inconvenienced Plaintiff and caused disruption to his daily life.

52. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent numerous hours investigating the unwanted phone calls including how they obtained his number and who the Defendant was.

53. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone

calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## COUNT I

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

54. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

55. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   (C) both such actions.

56. Defendant – or third parties directed by Defendant dialed numbers without to make non-emergency telephone calls to the telephone of Plaintiff.

57. These calls were made without regard to whether or not Plaintiff was on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phone of Plaintiff.

58. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phone of Plaintiff without his prior express written consent.

59. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant he was not interested in what Defendant was offering on multiple occasions. The violations were therefore willful or knowing.

60. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each of the 75 violations and a maximum of $1,500 in statutory damages for willful violations. Plaintiff is also entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, prays for the following relief:

    a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b. An injunction prohibiting Defendant from calling persons with registered phone numbers on the national do-not-call registry without the prior express permission of the called party;

    d. An award of actual and statutory damages; and

    e. Such further and other relief the Court deems reasonable and just.

///

///

///

///

///

///

///

///

///

///

///

///

## TRIAL BY JURY

61.  Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 22, 2023                    Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE

RYAN L. MCBRIDE, ESQ.
LEAD TRIAL COUNSEL FOR
PLAINTIFF

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
301 E. Bethany Home Road
Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
mike@kazlg.com